## Louisville & Nashville Railroad Company v. Noble's Administratrix.

(Decided May 16, 1930.)

ASHBY M. WARREN, H. T. LIVELY, J. P. HAMILTON, JESSE MORGAN and C. S. LANDRUM for appellant.

C. A. NOBLE and J. T. BOWLING for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

The Louisville & Nashville Railroad Company has appealed from a judgment for $10,000 recovered against it by the administratrix of Farish Noble for the alleged negligent killing of her intestate.

Farish Noble was employed by the Louisville & Nashville as a brakeman, and in the early morning of November 17, 1927, was head brakeman on a Louisville & Nashville train known as ''1453 work extra,'' which was operating on a branch road extending up First creek. The crew was composed of Conductor Holliday, Flagman Bently, Brakemen Noble and Jennings, and an engineer and fireman.

On this branch road they had gathered up 41 cars of coal, 2 of which were destined for a point in Kentucky and 39 for points without the state. The morning was dark and foggy and it was raining. The fatal accident occurred about 4:45 a. m., and Noble was instantly killed. The circumstances are these: This crew had instructions when they reached Typo, the point of junction with the main line, to call the dispatcher and get orders for disposition of this coal. When they got there Jennings did so, and was directed to place the cars having steel underframes upon storage track No. 1 at the Crawford yards and those with wooden underframes upon storage track No. 3.

The crew then proceeded with this train until they reached the Crawford yards, the caboose was uncoupled, and Bently was sent back north to protect the caboose from any train that might be following them.

The conductor was making up his report for the yardmaster. These brakemen and the engine crew all riding together on the engine proceeded to the south end of the Crawford yards. There the brakemen got off of the engine; the engine crew went on south with the train until they had cleared the switch opening the lead track in the Crawford yards. Jennings told Noble to open the switch on that track for storage track No. 1, while Jennings started south along the train to locate the cars having wooden underframes.

Noble threw the switch for the lead track, but for some unknown reason did not throw the switch for storage track No. 1. The train was backed presently, but instead of backing into the storage track No. 1, it entered storage track No. 4 and collided with a number of cars standing on that track, as a result of which Noble, who was riding the end of this backing train (for the purpose of protecting it, so his administratrix pleads), was killed, and to recover for his death this suit was brought.

Defendant alleged it was engaged in interstate commerce, and that many cars of coal in this train were going to points outside of the state; the proof showed 39 out of the 41 cars were going out of the state. That is not denied; therefore Noble when working on this train was also engaged in interstate commerce. Shanks v. Delaware, L. & W. R. Co., 239 U. S. 556, 36 S. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797; Columbia & P. S. R. Co. v. Sauter (C. C. A.) 223 F. 604; Illinois C. R. R. Co. v. Rogers (C. C. A.) 221 F. 52; Cincinnati, N. O. & T. P. R. Co. v. Goode, 155 Ky. 153, 159 S. W. 695. See general discussion of this question in Louisville & N. R. Co. v. Jolly's Adm'x, 232 Ky. 702, 23 S. W. (2d) 564.

That this particular engine and this particular crew would not take these cars outside the state does not keep them from being engaged in interstate commerce. The question is determined by where the coal was going, not by where Noble and other members of the crew were going to leave it. New York Cent. & H. R. R. v. Carr, 238 U. S. 260, 35 S. Ct. 780, 59 L. Ed. 1298; Waters v. Guile (C. C. A.) 234 F. 532; Philadelphia & R. R. Co. v. Hancock, 253 U. S. 284, 40 S. Ct. 512, 64 L. Ed. 907; Lehigh Valley R. Co. v. Normile (C. C. A.) 254 F. 680. Therefore this case comes under the Federal Employers' Liability Act (45 USCA secs. 51-59).

That act imposes liability upon carriers in interstate commerce for the wrongful death of their

employees engaged in that business for the benefit of three classes: "(a) The surviving widow or husband and children of such employee; and, if none, (b) then of such employee's parents; and, if none, (c) then of the next of kin dependent upon such employee."

Grammatically construed, the word "dependent" refers only to the next of kin.

The Supreme Court has held that the act was intended to permit recovery of such damages only as are susceptible of pecuniary valuation. Michigan Cent. R. R. v. Vreeland, 227 U. S. 59, 33 S. Ct. 192, 57 L. Ed. 417, Ann. Cas. 1914C, 176; American R. Co. v. Didricksen, 227 U. S. 145, 33 S. Ct. 224, 57 L. Ed. 456; Gulf, C. & S. F. R. Co. v. McGinnis, 228 U. S. 173, 33 S. Ct. 426, 57 L. Ed. 785; North Carolina R. R. Co. v. Zachary, 232 U. S. 248, 34 S. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159; Garrett v. L. & N. R. Co., 235 U. S. 308, 35 S. Ct. 32, 59 L. Ed. 242.

On the other hand, in Minneapolis, etc., R. Co. v. Gotschall, 244 U. S. 66, 37 S. Ct. 598, 61 L. Ed. 995, it was held that an action for the death of a minor son need not be taken from the jury, because there was no evidence of pecuniary loss resulting to the father, on whose behalf the suit was brought, since, under the local law, he was entitled to the earnings of his son during minority; the question being, not of right to recover, but only of the amount of damages which it was proper to award.

Plaintiff elected to proceed under the state statutes, but if she so desires she should be permitted to withdraw her election and conform her pleadings to the federal act.

There should be some pleading to show whether this young man left a widow or children, and if not whether his father is alive or not.

The laws of the several states, in so far as they cover the same field, were superseded by the Federal Employers' Liability Act (45 USCA secs. 51-59). Louisville & N. v. Strange, 156 Ky. 439, 161 S. W. 239; Louisville & N. v. Moore, 156 Ky. 708, 161 S. W. 1129; South Covington & C. St. Ry. Co. v. Finan, 153 Ky. 340, 155 S. W. 742.

The measure of damages approved by the United States Supreme Court should be given to the jury upon

the next trial, if the plaintiff then succeeds in making out a submittable case, that being one of the questions we reserve. Nashville, C. & St. L. Ry. v. Henry, 158 Ky. 88, 164 S. W. 310; Chesapeake & O. R. Co. v. Kelly, 241 U. S. 485, 36 S. Ct. 630, 60 L. Ed. 1117, L. R. A. 1917F, 367.

The court in instructing the jury erroneously gave the state rule for measure of damage; therefore the judgment is reversed. All other questions are reserved